IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| STATE AUTOMOBILE MUTUAL INSURANCE COMPANY, | } } } |
| Plaintiff, | } } |
| v. | } CASE NO. 4:04-cv-0278-RDP } |
| SELECTIVE INSURANCE COMPANY OF AMERICA, COASTLAND BUILDERS, LLC f/k/a DAI CONSTRUCTION, LLC and STEEL FRAMING, INC., | } } } } } } |
| Defendants. | } |

## MEMORANDUM OF OPINION

Pending before the court is State Automobile Mutual Insurance Company's ("Plaintiff") Motion for Summary Judgment (Doc. # 20) filed February 17, 2005, along with accompanying brief and exhibits. The court also has before it Coastland Builders, LLC's ("Coastland") Response to Plaintiff's Motion for Summary Judgment (Doc. # 23) including the affidavit of Owen Shuler[1] and Plaintiff's Reply (Doc. # 26). Having reviewed all the evidence and briefs, for the reasons explained more fully below, Plaintiff's Motion for Summary Judgment is due to be granted in part and denied in part.

---

[1] On March 21, 2005, Plaintiff filed a motion asking the court to strike Shuler's affidavit arguing that it is contradictory to his earlier sworn discovery responses. Plaintiff correctly recognizes that a "party cannot . . . create . . . an issue [of fact] with an affidavit that merely contradicts, without explanation, previously given clear testimony." Van T. Junkins & Assoc. Inc. v. U.S. Indus., Inc., 736 F.2d 656, 657 (11th Cir. 1984). However, it is also true that "every discrepancy contained in an affidavit does not justify the district court's refusal to give credence" to the affidavit. W. C. Lane v. Celotex Corp., 782 F.2d 1526, 1530 (11th Cir. 1986). Upon review, the court has determined that Coastland's discovery responses, while less than thorough, are not "'inherently inconsistent'" with Shuler's affidavit. Id. at 1531. Accordingly, the court will take Shuler's affidavit under consideration in ruling on Plaintiff's Motion for Summary Judgment, and Plaintiff's Motion (Doc. # 25) is **DENIED**.

I.      **Undisputed Factual Background and Procedural History**

In the year 2000, in conjunction with constructing the Crosswinds golf course in Savannah, Georgia, Coastland[2] entered into a contract with Defendant Steel Framing, Inc. ("Steel Framing") for the manufacture of steel trusses to be use in the golf course clubhouse.[3] After the trusses were installed, an alleged manufacturing defect caused them to collapse. The collapse destroyed the trusses themselves, damaged other portions of the partially constructed clubhouse, and caused the completion of the clubhouse to be delayed.

After the collapse, Golf Associates, LLC, Coastland's employer, assigned its claims of damage to Coastland. In addition, Coastland's insurer, Defendant Selective Insurance Company of America ("Selective"), partially reimbursed Coastland for the expenses associated with the collapse. On July 1, 2003, Coastland and Selective filed a Complaint against Steel Framing in the Superior Court of Gwinnett County Georgia, alleging breach of implied duty of warranty, negligence, breach of contract and demanding arbitration. On July 25, 2003, Steel Framing filed for Chapter 11 bankruptcy in the Northern District of Alabama. In September 2003, the Bankruptcy Court for the Northern District of Alabama granted Coastland's motion to modify the automatic stay to allow it to proceed against Steel Framing, but only to recover insurance proceeds. Plaintiff in the instant action, which is Steel Framing's insurer, agreed to defend Steel Framing in the Georgia state action

---

[2] When it entered the contract with Steel Framing, Coastland was operating under the name Dai Construction, LLC.

[3] A truss is "[a]n engineered and manufactured roof support member with 'zig-zag' framing members." The truss "[d]oes the same job as a rafter but is designed to have a longer span than a rafter." See www.homebuildingmanual.com/Glossary.htm#T.

under a letter of reservation of rights. Sometime thereafter the action was referred to arbitration.

On February 4, 2004, Plaintiff instituted the instant action for declaratory judgment against Coastland, Steel Framing and Selective, seeking a declaration that Plaintiff has no duty to defend or indemnify Steel Framing for any claims brought by Coastland or Selective. Coastland answered on March 2, 2004, but the other two Defendants failed to appear. Plaintiff moved for entry of default as to Selective and Steel Framing, and on April 26, 2004, the Clerk of Court entered default against both Defendants.[4] The underlying arbitration between Coastland and Steel Framing has been stayed pending this court's decision. In December 2004, this court referred this case to mediation. Mediation having failed, Plaintiff filed its Motion for Summary Judgment as to a portion of its claims.[5]

## II.   Summary Judgment Standard

Under Fed. R. Civ. P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Chapman v. AI Transp., 229

---

[4] Plaintiff's counsel contacted counsel for Selective and informed the court that Selective did not wish to defend against Plaintiff's claim. With respect to Steel Framing, no party at this point has informed the court of the reason for its default, although its pending bankruptcy is apparently the cause. Moreover, Plaintiff has not made an attempt to update the court as to the status of Steel Framing's bankruptcy proceeding. Of particular concern to the court is whether Plaintiff properly moved to lift the automatic stay before filing the instant suit. In the event that Plaintiff did not, the court is doubtful that the Clerk's entry of default has any effect on the rights of Steel Framing.

[5] Plaintiff's complaint alleges that it may deny Steel Framing coverage based upon its exclusion "k" and based upon Steel Framing's late reporting of its claims. However, Plaintiff concedes that its argument regarding late reporting is fact intensive and not appropriate for summary judgment.

F.3d 1012, 1023 (11th Cir. 2000). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings or filings, which it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. at 324.

The substantive law will identify which facts are material and which are irrelevant. Chapman, 229 F.3d at 1023; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. Chapman, 229 F.3d at 1023; Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson, 477 U.S. at 248; Chapman, 229 F.3d at 1023. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson, 477 U.S. at 249.

**III.   Substantive Law and Analysis**

It is a well-settled principle of Alabama law that "where there is no ambiguity in the terms of an insurance contract, it is the duty of the court to apply its terms and enforce the contract as written." Upton v. Mississippi Valley Title Ins. Co., 469 So. 2d 548, 554 (Ala. 1985); Gregory v. Western World, Inc., 481 So. 2d 878, 881 (Ala. 1985). This principle applies not only to the general terms of a contract, but to any exclusions as well. Id. However, "the insurer bears the burden of proving the applicability of any policy exclusion." Acceptance Ins. Co. v. Brown, 832 So. 2d 1, 12

(Ala. 2001). Where an exclusion or policy term is ambiguous, the language "should be construed favorably to the insured." Buford Equipment Co., Inc. v. Centennial Ins. Co., 857 F. Supp. 1499, 1504 (M.D. Ala. 1994); Antram v. Stuyvesant Life Ins. Co., 287 So. 2d 837, 840 (Ala. 1973). Nevertheless, "[t]he mere fact that adverse parties contend for different constructions [of a particular policy provision] does not itself force the conclusion that the disputed language is ambiguous." Upton, 469 So. 2d at 554 (quoting Antram, 287 So. 2d at 840).

The cornerstone of the parties dispute is whether the majority of damages claimed by Coastland fall within the language of exclusion "k" of the policy which precludes coverage for damage to the insured's (Steel Framing's) product. As discussed in more detail below, Plaintiff bears the burden of proof on this issue. See Acceptance, 832 So.2d at 12. Plaintiff's insurance policy at issue contains the following general coverage provision:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies . . .
>
> This insurance applies to 'bodily injury' and 'property damage' only if: (1) the 'bodily injury' or 'property damage' is caused by 'an occurrence' that takes place in the 'coverage territory'; and (2) the 'bodily injury' or 'property damage' occurs during the policy period.

Policy exclusion "k. Damage To Your Product." precludes coverage for "'property damage' to 'your product' arising out of it or any part of it." The policy defines "property damage" to mean "physical injury to tangible property, including all resulting loss of use of that property." The terms of the policy define "your product" as

> a.  any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by: (1) You; (2) others trading under your name; or (3) a person or organization whose business assets you have acquired; and b. containers (other than vehicles), materials, parts of equipment furnished in connection with such goods or products.

Plaintiff argues in its initial submission (Doc. # 22) that all the damages, except a small sum paid to Savannah Drywall Co., fall within exclusion k. Plaintiff presents as evidence Coastland's Responses to Plaintiff's Interrogatories and Request for Production (Doc. # 20). In its answer to interrogatory number 2.(c) which asks for "[t]he cost to repair or replace any product, construction work other than the product of Steel Framing, Inc.," Coastland offered a stack of receipts and invoices for costs and the following typed response:

> the collapse of the steel trusses provided by Steel Framing constituted damage to not only the surrounding physical structure, but damaged the project as a whole. ***Furthermore, property damages extended well beyond the damage to Steel Framing's own product*** . . . .

(emphasis added). In that same interrogatory answer, Coastland also stated that "damages relating to the damage to the structure *as a whole, including delays* are supported by the attached documentation." (Emphasis added). In response, Coastland presents the affidavit of Owen Shuler. Shuler expands on Coastland's answer to interrogatories and explains that as a result of the trusses collapse, Coastland incurred damages including: a) repairs to portions of the collapsed club house other than the trusses; b) debris removal not associated with the replacement or clean up of the trusses themselves; c) costs associated with delay, such as the erection of a temporary clubhouse; and d) lost profits and business opportunities. Plaintiff, in its reply, concedes for the purpose of the summary judgment motion only that any damage to property other than the trusses themselves is covered. Plaintiff also concedes for purposes of the motion that any loss of use of the clubhouse under construction which resulted from the trusses collapse would also be covered.

According to the Alabama Supreme Court, a work product exclusion precludes coverage for damage to the insured's product itself, but does not relieve the insurer of its liability to cover damage

caused to other property as a result of the failure of the insured's product. See U.S. Fidelity and Guaranty Co. v. Bonitz Insulation Co., 424 So. 2d 569, 573 (Ala. 1982). In Bonitz, the plaintiff, a roofing insulation company, installed a roof on a city gymnasium. Id. at 570. After the roof was installed, it began to leak. Id. at 571. Ultimately it had to be totally replaced. Id. Faced with a lawsuit by the city claiming losses for the roof's failure, Bonitz sued its insurers for a declaratory judgment for coverage. Id. Based upon an applicable work product exclusion, one of Bonitz's insurers claimed it owed no duty to defend or indemnify for damage caused by the faulty roof. Id. at 573. The court agreed with the insurer that damage to the *roof itself* was precluded. Id. (emphasis added). However, the court noted that there was also "damage to ceilings, walls, carpets, and the gym floor," and reasoned that "there can be no doubt that, if the occurrence or accident causes damage to some other property than the insured's product, the insured's liability for such damage becomes the liability of the insurer under the policy." Id.; accord Berry v. South Carolina, Ins. Co., 495 So. 2d 511, 512 (Ala. 1986).

In the instant case, Coastland claims damages for $22,374.50, representing the original purchase price of the steel trusses, and $8,327.13, spent to purchase replacement trusses. Following the reasoning in Bonitz, exclusion k precludes coverage for any of those damages because they relate solely to the insured's product and its replacement. Id. As to these damages, Plaintiff's motion for summary judgment is due to be granted.

But the Bonitz decision also mandates that coverage for structural damage to property other than the insured's product is not precluded by a work product exclusion. Accordingly, the $1,331.36, representing the cost of replacing dry wall destroyed by the collapse, is likely covered, and therefore, Plaintiff's motion as to this cost is due to be denied.

With regard to the list of other damages claimed by Coastland, there exist genuine issues of material fact such that those claims cannot be resolved on summary judgment. Coastland claims damages for demolition, debris removal, repair work, equipment rental and other miscellaneous costs associated with the collapse of the trusses. While Plaintiff contends all of these damages fall within the work product exclusion, in his affidavit, Owen Shuler claims that part of these damages did not involve the trusses themselves. Where an insured's product has failed and that failure requires repair work or other construction,

> such portion, if any, of the labor expense . . . attributable to the tearing out and putting back other parts of the building (as compared with the labor attributable to the actual removal and replacement of the . . . [insured's product] . . . ) . . . is within the coverage of the policy.

U.S. Fidelity and Guaranty Co. v. Andalusia Ready Mix, Inc., 436 So.2d 868, 872 (Ala. 1983) (quoting Wyoming Sawmills, Inc. v. Transp. Ins. Co., 578 P.2d 1253, 1257 (Or. 1978)). Thus, to the extent that Coastland's damages relate exclusively to the "removal and replacement" of the collapsed trusses, Plaintiff is not required to provide coverage with respect to those claims. See id. However, if any of these damages are not related the repair and replacement of the trusses themselves, Plaintiff must provide coverage. Because the evidence now does not clearly establish what portion of the claimed damages focused solely on the trusses, Plaintiff's motion for summary judgment as to these damages is due to be denied.

Finally, Owen Shuler's affidavit also claims damages for lost profits, loss of use of the clubhouse, loss of contracts and general expenses because of delay. Claims for these types of damages are not precluded by the work product exclusion. Moreover, the Alabama Supreme Court has confirmed that a plaintiff may recover for the loss of use of property, loss of profits and other

consequential damages, because those types of damages are within the term "property damage," under contracts similar to the one here. See Fitness Equip. Co., Inc. v. Penn. Gen. Ins. Co., 493 So. 2d 1337, 1342-43 (Ala. 1986);[6] see also Liberty Mut. Ins. Co. v. Wheel Wright Trucking Co., Inc., 851 So. 2d 466, 495 (Ala. 2002) (holding that insurance company was liable to cover the purely financial losses resulting from failure of insured's product, even when there was no physical damage to the any other property). Accordingly, Plaintiff's motion for summary judgment as to these damages is also due to be denied.

## IV.   Conclusion

In conclusion, as to the $22,374.50 paid for the original trusses and the $8,327.13 paid for replacement trusses, Plaintiff is entitled to judgment as a matter of law, and its motion for summary judgment is due to be granted. With respect to all other damages claimed by Coastland, there exist genuine issues of material fact, and Plaintiff's motion for summary judgment is due to be denied. An order in accordance with this memorandum of opinion will be entered contemporaneously herewith.

**DONE** and **ORDERED** this      25th      day of July, 2005.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

---

[6] In Fitness Equip. Co., the Alabama Supreme Court cited Aetna Cas. & Sur. Co. v. General Time Corp., 704 F.2d 80 (2d Cir. 1983), and held that an insurance contract similar to the one at issue allowed recovery of lost profits and consequential damages. Fitness Equip. Co., 493 So.2d at 1343. The court noted that in most jurisdictions, "once physical damage to property other than that of the insured [is] found, loss of profits [is] covered as consequential damages of the physical damage." Id.